# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ARABELLA HAYES,

       Plaintiff,

v.

Case No. 8:23-cv-2885-JRK

LELAND C. DUDEK,
Acting Commissioner of Social
Security, [1]

       Defendant.

## OPINION AND ORDER[2]

### I. Status

Arabella Hayes ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of epilepsy, uncontrolled seizures, post-traumatic stress disorder ("PTSD"), anxiety, and a fractured vertebrae. Transcript of Administrative

---

[1] Leland C. Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Dudek is substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed March 4, 2024, at 66, 77, 255, 267, 327. Plaintiff protectively filed an application for SSI on March 5, 2021, alleging a disability onset date of February 1, 2021.[3] Tr. at 201-07. The application was denied initially, Tr. at 66-75, 76, 100-03, and upon reconsideration, Tr. at 77-87, 88, 113-14.[4]

On July 27, 2023, an Administrative Law Judge ("ALJ") held a hearing, during which Plaintiff, who appeared with a non-attorney representative, and a vocational expert ("VE") testified.[5] Tr. at 36-65. On August 11, 2023, the ALJ issued a Decision finding Plaintiff not disabled since the date the SSI application was filed. See Tr. at 10-27.[6]

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her representative. See Tr. at 4-5 (Appeals Council exhibit list and order), 199-200 (request for review), 371-72 (brief). On

---

[3] Although the SSI application was actually filed on March 30, 2021, Tr. at 201, the protective filing date is listed elsewhere in the administrative transcript as March 5, 2021, Tr. at 66, 77.

[4] Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5] The hearing was held via telephone, with Plaintiff's consent. Tr. at 38, 119-20, 161-62, 180-81, 191-92.

[6] The administrative transcript also contains an application filed on an unknown date on behalf of Plaintiff for child SSI benefits and adjudicated favorably, with benefits awarded effective in April 2014. Tr. at 10, 213-21. The ALJ in this matter recognized that the child SSI benefits should be reviewed by the Administration per the Regulations because Plaintiff had turned 18 years old in February 2021, but "for whatever reason," that matter had not been forwarded to the ALJ for review. Tr. at 10. Thus, the ALJ's Decision addresses only the SSI application protectively filed on March 5, 2021. Tr. at 10.

October 25, 2023, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On December 15, 2023, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ failed to properly: 1) "consider the persuasiveness of the opinion evidence"; 2) consider [Plaintiff's] subjective complaints"; and 3) "consider [Plaintiff's] migraine headaches, [PTSD] and obsessive compulsive disorder [('OCD')] when arriving at [the] residual functional capacity [('RFC')] assessment." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 24; "Pl.'s Mem."), filed September 3, 2024, at 3, 14, 17 (some capitalization and emphasis omitted). On September 20, 2024, Defendant responded to Plaintiff's arguments by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 26; "Def.'s Mem."). After a thorough review of the entire record and the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 13-27. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since March 5, 2021, the Title XVI application date." Tr. at 13 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: seizure disorder; headache disorder;

---

[7]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

depression; anxiety; [OCD]; attention deficit hyperactivity disorder; and [PTSD]." Tr. at 13 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
>> [Plaintiff can] perform light work as defined in 20 CFR [§] 416.967(b), though she cannot climb. [Plaintiff] also cannot balance on slippery, uneven, or erratically moving surfaces. She must avoid any exposure to unprotected heights. [Plaintiff] cannot operate dangerous machinery. She also must avoid any exposure to extreme heat. [Plaintiff] can tolerate occasional exposure to extreme cold and industrial vibration, as well as tolerate occasional exposure to Selected Characteristics of Occupations (SCO) noise intensity levels above three (3). [Plaintiff] is also limited to performing routine and repetitive tasks, in a work environment free from fast-paced assembly-line type production requirements. She can work at occupations involving only simple work-related decision[s] and with few (if any) workplace changes. [Plaintiff] is also limited to occasional contact with co-workers and can perform no tandem tasks. She is also limited to brief and superficial interactions with the general public.

Tr. at 15 (emphasis omitted).

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 25 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("18 years old . . . on the

- 5 -

date the Title XVI application was filed"), education ("limited"), lack of work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 25 (emphasis and citation omitted), such as "Remnant Sorter," "Silver Wrapper," and "Cleaner (Housekeeping)," Tr. at 26 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . since March 5, 2021, the date the Title XVI application was filed." Tr. at 27 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959

F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in three ways. They are addressed in turn.

### A. Opinion Evidence

Plaintiff asserts the ALJ erred in evaluating the opinion evidence from Scott Scheuermann, APRN, a neurology specialist. Pl.'s Mem. at 3-14. According to Plaintiff, the ALJ inappropriately relied on evidence pre-dating the SSI filing date and otherwise relied on "factually incorrect" statements to find Mr. Scheuermann's opinion to be unpersuasive. Id. at 3, 3-14. Plaintiff's argument mainly centers around the ALJ's finding throughout the Decision that Plaintiff was noncompliant with various medications. See id. Responding, Defendant argues "the ALJ properly evaluated the medical opinions pursuant to regulation and provided a thorough and accurate discussion of the evidence

leading to the conclusion that Mr. Scheuermann's opinion was unpersuasive." Def.'s Mem. at 5.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources").

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R.

§§ 404.1520c(a), 416.920c(a).[8] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same,

---

[8] Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

- 9 -

[the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[9]

Here, Mr. Scheuermann, who has treated Plaintiff since September 2022, authored a May 26, 2023 letter and an undated Medical Source Statement regarding Plaintiff's seizures. Tr. at 1305-14. Of particular relevance here, the letter indicates Plaintiff "has remained compliant in all medical treatment without fault" but has "a severe uncontrolled . . . seizure disorder" that has been "verified and quantified on EEG testing, diagnosed by a board certified epileptologist, and at this time has remained refractory to treatment." Tr. at 1305. In the Medical Source Statement, Mr. Scheuermann opined Plaintiff can have more than fifty seizures per month, with twelve being captured in a day on an EEG test "while the patient was on multiple medications." Tr. at 1306. According to Mr. Scheuermann, the seizures were "uncontrolled" on medications "Lamictal, Depakote and Klonopin," and Plaintiff had "just started Trileptal." Tr. at 1307. Mr. Scheuermann wrote that Plaintiff "has always been compliant with all care and treatments ordered and never subtherapeutic due to noncompliance." Tr. at 1308. The functional restrictions that Mr.

---

[9] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

- 10 -

Scheuermann imposed would no doubt result in a finding of disability. See Tr. at 1306-09.

The ALJ addressed Mr. Scheuermann's opinion as follows:

> Nurse Practitioner Scheuermann has recently opined that [Plaintiff] has disabling seizures that have proved "refractory to treatment" despite the fact [Plaintiff] "remained compliant in all medical treatment[,] without fault." Yet, the summary of medical evidence discussed above suggests otherwise. Indeed, the nurse practitioner heavily emphasized the fact [Plaintiff] had never had "subtherapeutic" anti-convulsant medication levels. This is quite clearly contrary to the evidence, including emergency department records from Johns Hopkins All Children's Hospital in May 2019, where it was noted [Plaintiff] had been off of her seizure medications for several months at that time, including a notation her medication was stopped in October 2018. Nurse Practitioner Scheuermann's statement that [Plaintiff] has been compliant in all medical treatment, without fault, is inconsistent with the findings of other practitioners, including Dr. Reddy who noted [Plaintiff] was over-using her clonazepam and taking only half the prescribed dosage of her Depakote, and PA-C Sadlowski who noted [Plaintiff] was only taking her epilepsy medications twice a week, instead of twice a day as prescribed. Nurse Practitioner Scheuermann did not recognize or discuss the fact that Dr. Reddy discharged [Plaintiff] from his practice due to a "breakdown in physician-patient communication." The opinion from NP Scheuermann is unpersuasive as it is inconsistent with objective medical evidence and without support from evidence from other sources, as well as lacking in support for the proclaimed severity of debility even in NP Scheuermann's own recorded objective observations.
>
> By way of example, the severity of limitation expressed by NP Scheuermann in his opinion statement . . . is

- 11 -

> contradictory to his own evaluation of [Plaintiff] in March 2023, where his own personal examination revealed [Plaintiff] to have a normal appearance with intact extraocular movements, normocephaly, pupils equal, round and reactive to light, a normal heart rate and rhythm, normal pulmonary effort and normal breath sounds, soft abdomen, normal range of motion of the neck, back, and generally, and skin that was warm and dry. Neurological examination conducted by NP Scheuermann revealed [Plaintiff] was alert and oriented to person, place, and time, without focal deficit. Sensation, motor function, coordination and gait were intact. Mood, behavior and thought content were normal.

Tr. at 24 (citations omitted).

The ALJ provided sufficient reasons, supported by substantial evidence, for finding Mr. Scheuermann's opinion to be unpersuasive. Plaintiff challenges the ALJ's discussion as referring to evidence that predates the SSI filing date, arguing such evidence is immaterial to the time period at issue. Pl.'s Mem. at 7-8. Even excising that part of the discussion, however, the ALJ's reasons are sound. In rejecting Mr. Scheuermann's unequivocal medication compliance findings, the ALJ referred the reader to "the summary of medical evidence discussed above" as "suggest[ing] otherwise." Tr. at 24. That detailed summary documents multiple medical provider notations of noncompliance during the relevant time period. Tr. at 20-22. It also documents at least one provider suspecting Plaintiff was engaging in "scheduled medication seeking behavior," and multiple occasions when Plaintiff had presumptive positive marijuana

tests. Tr. at 20, 20-22 (citations omitted). Moreover, the ALJ then provided specific examples of inconsistencies between Mr. Scheuermann's findings and those of Anoop Reddy, M.D., and colleagues—noting that ultimately Plaintiff was discharged from Dr. Reddy's care (on December 1, 2021) "due to a breakdown in physician-patient communication." Tr. at 24 (citing Exs. 22F and 25F, located at Tr. at 773-92, 829-40). The ALJ correctly observed that Mr. Scheuermann "did not recognize or discuss" the earlier discharge by Dr. Reddy. Tr. at 24. Then, the ALJ provided specific examples of why Mr. Scheuermann's own notes are contradictory to the opinion. Tr. at 24 (citing Ex. 36F at pp. 7-8, located at Tr. at 1300-01). Essentially, the notes document normal examination findings. Tr. at 1300-01. Although in a vacuum they may not be overly persuasive as to the prevalence and effects of Plaintiff's seizures,[10] when considered together with the rest of the evidence and findings in the ALJ's Decision, there was no error in relying on Mr. Scheuermann's examination findings when considering the persuasiveness of his opinion.

### B. Subjective Complaints

Plaintiff argues the ALJ erred in evaluating her subjective complaints about how her seizures affect her. Pl.'s Mem. at 14-16. According to Plaintiff, the ALJ inappropriately relied on Plaintiff's alleged non-compliance with

---

[10]     Plaintiff makes this argument. See Pl.'s Mem. at 13-14.

treatment as the only reason Plaintiff's subjective complaints were not accepted. Id. Responding, Defendant contends the ALJ engaged in the appropriate inquiry and did not rely solely on noncompliance. Def.'s Mem. at 13-17.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations in effect at the time of the ALJ's Decision provided that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other

> factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 16. Contrary to Plaintiff's contention, the ALJ relied on a number of factors in making this finding. The ALJ detailed the medical evidence and findings therein (that have already been discussed in Section IV.A). See Tr. at 17-22. Further, the ALJ discussed third-party statements about how Plaintiff's impairments affect her. Tr. at 23. The ALJ noted a consultative psychologist's findings about what Plaintiff could do despite her impairments, including daily activities. Tr. at 23. The ALJ

considered reported side effects of medications. Tr. at 24. In sum, the ALJ considered the relevant factors in assessing Plaintiff's subjective complaints, and the ALJ's findings are supported by substantial evidence.

**C. RFC Finding**

Plaintiff argues the ALJ erred in assessing the RFC because it fails to take into account Plaintiff's migraine headaches, PTSD, and OCD. Pl.'s Mem. at 17-18. Responding, Defendant asserts the ALJ properly considered all of Plaintiff's impairments, including these, in arriving at the RFC. Def.'s Mem. at 17-22.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at \*5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination")

(citing 20 C.F.R. § 404.1545; <u>Reeves v. Heckler</u>, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, in assessing Plaintiff's RFC, the ALJ provided detailed discussion of Plaintiff' various impairments and the limitations assigned as a result:

> Having thoroughly considered and evaluated the medical and nonmedical evidence of record, the undersigned finds that [Plaintiff] is limited to light work, though she cannot climb. [Plaintiff] also cannot balance on slippery, uneven, or erratically moving surfaces. She must avoid any exposure to unprotected heights. [Plaintiff] cannot operate dangerous machinery. She also must avoid any exposure to extreme heat. These limitations are to account for [Plaintiff's] seizure disorder that is purportedly exacerbated by hot temperatures.
>
> Furthermore, [Plaintiff] can tolerate occasional exposure to extreme cold and industrial vibration, as well as tolerate occasional exposure to Selected Characteristics of Occupations (SCO) noise intensity levels above three (3). The undersigned includes these necessary accommodations as a precaution for the seizure disorder, as well as the potentiating factor relative to the severity or duration of [Plaintiff's] headaches.
>
> Likewise, [Plaintiff's] seizure disorder, headaches, and mental impairments limit her to performing routine and repetitive tasks in a work environment free from fast-paced assembly line production requirements. She can work at occupations involving only simple work-related decision[s] and with few (if any) workplace changes. [Plaintiff] is also limited to occasional contact with coworkers and can perform no tandem tasks, and she is also limited to brief and superficial interactions with the general public. The mental [RFC] aligns with

>the mild to moderate "paragraph B" findings established above.

Tr. at 23.

The ALJ's Decision reflects thoughtful consideration of the effects of all of Plaintiff's impairments, is supported by substantial evidence, and need not be disturbed.

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence. Based on the foregoing, it is

**ORDERED**:

1.   The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.   The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 25, 2025.

_____
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record